IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HAWAII CARPENTERS TRUST FUNDS, *Health & Welfare Fund by its trustees* Audrey Hidano, Henry Iida, Glen Kaneshige, Thomas Toma, Elmer Cabico, Paul C.K. Chang, Ronald Taketa, Clifford Respicio, Russell Young, Mitchell Tynanes, Eric Hashizume, Lance Yoshimura and Keith Hirota; George Ehara; *Apprenticeship & Training Fund by its trustees* Dale Sakamoto-Yoneda; Conrad Murashige, Ron Taketa, Lance Yoshimura, Dean Takahashi, Thomas Toma, Claude Matsumoto, Wil Ideue, Duke Lang, Terry Ikeda, John Bley and John Pitts; *Vacation & Holiday Fund by its trustees* James Watanabe, Wil Ideue, Gerard Sakamoto, Paul Sasaki, Jay Kadowaki; James Watanabe, Jon Tesoro, Mel Fujii, Curtis Kern, Michael Cadaoas, Alfred Dela Cruz, Lani Smithson, Christian Tackett, Paul Silen and Christian Tackett; *Market Recovery Program by its trustees* Thalia Choy, Alan Shintani, Steven Hidano, Gerard Sakamoto, Mark Kapahu, William Maglinti, Jr.; Leonard Hoshijo, Lance Yoshimura, Peter Robb, Justin Kochi, Bill Wilson, Lance Inouye, Craig Fukuda and Darren Ho; *Financial Security Fund by its trustees* Gordon L. Scruton, Lance Wilhelm, Conrad Murashige, Kenneth Sakurai, Loyce C. Morris, Ronald Taketa, Kenneth Spence, Michael Hawes, Kealii B. Flood, Malvin Ang, Lance Yoshimura, Alan | CIVIL NO. 10-00352 ACK-LK<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT, AS SUPPLEMENTED** |

Shintani, Gerry Majkut and Mark )
Luna; *Drywall Training Fund by* )
*its* trustees Glenn Young; Justin )
Kochi; Myles Hokama; Clyde )
Takatsuki, Karl Sinclair, Lito )
Alcantra, Denis Mactagone, )
William Maglinti, Jr., Raynard )
(Shayne) Chung, Reynaldo Tabura, )
Bert Beaman, Mike Goodnight; 401- )
*K Fund by its trustees* Gordon )
Scruton, Conrad Murashige, )
Kenneth Sakurai, Lance Wilhelm, )
Loyce C. Morris, Malvin Ang, )
Ronald Taketa, Lance Yoshimura, )
Kenneth Spence, Michael Hawes, )
Kealii B. Flood, Alan Shintani, )
Gerry Majkut and Mark Luna )
                                    )
               Plaintiffs,          )
                                    )
          vs.                       )
                                    )
TNT PLASTERING & STUCCO, INC.;      )
JOHN DOES 1-100; JANE DOES 1-100;   )
DOE CORPORATIONS 1-100; DOE         )
PARTNERSHIPS 1-100; DOE ENTITIES    )
1-100; DOE GOVERNMENTAL UNITS 1-    )
100,                                )
                                    )
               Defendants.          )
_____ )

### ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT, AS SUPPLEMENTED

On June 22, 2010, Plaintiffs Trustees of the Hawaii Carpenters Trust Funds ("Plaintiffs" or "Trust Funds"), by and through their attorneys, McCorriston Miller Mukai MacKinnon LLP, filed this action for damages against Defendant TNT Plastering & Stucco, Inc. ("Defendant"), alleging that Defendant materially

2

breached the master collective bargaining agreement and the trust agreements (collectively, "the CBA") between Defendant and the United Brotherhood of Carpenters and Joiners of America, Local 745, AFL-CIO. Plaintiffs claim that Defendant failed to contribute and pay to the Trust Funds certain employee benefit contributions arising from work performed by Defendant's covered employees, which amounts should be paid to the Trust Funds on or before the due dates as specified in the CBA and disclosed by an audit of Defendant's payroll records conducted in accordance with the terms of the CBA.

Jurisdiction of this Court is based on the Labor-Management Relations Act of 1947 ("LMRA"), as amended (29 U.S.C. § 185(a)), and the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended (29 U.S.C. §§ 1132 & 1145).

Service of process was made on Defendant on July 16, 2010, as is evidenced by the Return of Service filed herein on July 19, 2010. The Clerk of Court entered default against Defendant on August 13, 2010.

On August 26, 2010, Plaintiffs filed the instant Motion for Entry of Default Judgment Against TNT Plastering & Stucco, Inc. ("Motion"), seeking to recover a money judgment for: delinquent contributions owed; liquidated damages; interest; additional per diem interest until satisfaction of judgment; and

attorneys' fees and costs to date, including fees for the attendance at the hearing on the instant Motion and finalization for the order and judgment thereafter from Defendant.  Plaintiffs requested that the judgment be without prejudice to their right to seek other and further damages from Defendant arising from unaudited hours worked by Defendant's covered employees.

Plaintiffs' Motion came on for hearing on October 4, 2010, before United States Magistrate Judge Leslie E. Kobayashi, after notice of said hearing was provided to Defendant.  Lorraine H. Akiba, Esq., appeared on behalf of Plaintiffs.  Defendant failed to appear and/or respond to Plaintiffs' Motion.  Pursuant to the magistrate judge's instructions at the hearing, Plaintiffs filed a supplemental declaration by Ms. Akiba on October 8, 2010 ("10/8/10 Supplemental Akiba Declaration").

On October 25, 2010, the magistrate judge issued her Findings and Recommendation to Grant Plaintiffs' Motion for Default Judgment ("10/25/10 F&R").  In the 10/25/10 F&R, the magistrate judge concluded that default judgment was warranted in this case and recommended that this Court grant Plaintiffs recovery of: delinquent contributions in the amount of $134,155.91; liquidated damages in the amount of $29,551.10; twelve percent (12%) interest in the amount of $4,043.15; 401(k) Lost Earning Interest in the amount of $117.12 until satisfaction

4

of judgment; attorneys' fees in the amount of $1,241.00; and costs in the amount of $508.26 to date. The magistrate judge also recommended: that this Court award Plaintiffs additional interest at a per diem rate of twelve percent (12%) until the satisfaction of judgment; and that the entry of final judgment in this matter be without prejudice to Plaintiffs' right to seek other and further damages from Defendant arising from unaudited hours worked by Defendant's covered employees, both before and after August 2010, which are not the subject of the instant case.

On November 29, 2010, this Court issued an order rejecting the 10/25/10 F&R and recommitting the Motion to the magistrate judge ("11/29/10 Order"). In the 11/29/10 Order, this Court agreed that default judgment appeared to be appropriate in the instant case, but identified the following inconsistencies between the amounts that Plaintiffs sought and the supporting documentation that Plaintiffs submitted: (1) although liquidated damages may equal twenty percent (20%) of the delinquent contributions, the liquidated damages sought – $29,551.10 – exceed twenty percent of the delinquent contributions sought – $134,155.91; (2) Plaintiffs' supporting documentation submitted with the Motion indicated that the balance due on contributions was $138,316.18, while Plaintiffs sought $134,155.91 in delinquent contributions; (3) there was no explanation or

justification for the requested $117.12 in "401(k) Lost Earning Interest"; and (4) the Master Agreement provides for interest on the unpaid contributions of twelve percent (12%) <u>per</u> <u>annum</u>, but Plaintiffs sought interest at a <u>per</u> <u>diem</u> rate of twelve percent (12%).

On November 30, 2010, the magistrate judge issued an entering order requiring Plaintiffs to file a supplemental memorandum and declaration, with supporting documents, addressing the issues identified in the 11/29/10 Order. The magistrate judge expressly stated that, if Plaintiffs' supplemental filing did not fully address those issues, she would recommend that Plaintiffs' Motion be denied.

On December 14, 2010, Plaintiffs filed their supplemental memorandum, with a supporting declaration and exhibits ("12/14/10 Supplemental Memorandum").[1]

### DEFAULT JUDGMENT

Having obtained entry of default against Defendant, Plaintiffs now seek default judgment pursuant to Fed. R. Civ. P. 55(b)(2). "'The general rule of law is that upon default the

---

[1] Subsequent to the filing of the 12/14/10 Supplemental Memorandum, Leslie E. Kobayashi resigned from her position as a United States Magistrate Judge and was sworn in as a United States District Judge. On January 25, 2011, this motion therefore was referred to this Court.

6

factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (quoting Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977)).

A plaintiff who obtains an entry of default is not entitled to default judgment as a matter of right. See Warner Bros. Entm't Inc. v. Caridi, 346 F. Supp. 2d 1068, 1071 (C.D. Cal. 2004). Default judgments are disfavored; courts should decide cases on the merits if possible. See In re Roxford Foods, Inc., 12 F.3d 875, 879 (9th Cir. 1993). Thus, "any doubts as to the propriety of a default are usually resolved against the party seeking a default judgment." VonGrabe v. Sprint PCS, 312 F. Supp. 2d 1313, 1319 (S.D. Cal. 2004) (citing Pena v. Seguros La Comercial, S.A., 770 F.2d 811, 814 (9th Cir. 1985)).

In determining whether to grant default judgment, courts should consider the following factors:

> (1) the possibility of prejudice to the plaintiff,
> (2) the merits of the plaintiff's substantive claim,
> (3) the sufficiency of the complaint,
> (4) the sum of money at stake in the action,
> (5) the possibility of a dispute concerning material facts,
> (6) whether the default was due to excusable neglect, and
> (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Warner Bros., 346 F. Supp. 2d at 1071-72 (quoting Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986)).  In addition, a court can deny default judgment where the defendant has appeared and actively defends against the plaintiff's claims.  See VonGrabe, 312 F. Supp. 2d at 1319.

Having considered all of the relevant factors, this Court CONCLUDES that default judgment is warranted in this case.

**FINDINGS**

Having exhaustively reviewed Plaintiffs' Motion, the 10/8/10 Supplemental Akiba Declaration, the 12/14/10 Supplemental Memorandum, and the record established in this action, this Court HEREBY FINDS as follows:

**A.**   **Liability**

1.   At all times material herein, each of the above-named Plaintiffs was, and now is, an employee benefit plan organized and existing under the laws of the United States and whose principal offices are in the City and County of Honolulu, State of Hawai`i.  At all times herein mentioned, each of the above-named Plaintiffs was, and now is, an express trust created by a written trust agreement subject to and pursuant to Section 302 of the LMRA (29 U.S.C. § 186) and a multi-employer employee benefit plan within the meaning of the ERISA (29 U.S.C. § 1002).

2.   Defendant is a Hawai`i corporation doing business in

8

the State of Hawai`i.

3.    On or about July 27, 2006, Defendant made, executed and
delivered to the United Brotherhood of Carpenters & Joinders of
America, Local 745, AFL-CIO ("the Union"), a certain written
collective bargaining agreement, effective September 1, 2002 to
and including August 31, 2007, entitled "Certification of Receipt
and Acceptance of the Master Agreement Covering Drywall &
Acoustical Workers and Lathers in the in the State of Hawaii and
Declaration of Trust Agreements Appurtenant thereto," by which
Defendant agreed to the terms and conditions of the attached
master agreement and the various trust agreements establishing
each of Plaintiffs' trusts (all collectively, "the CBA").
[Complaint at ¶ 6, Exhibit A ("7/27/06 Certification").]

4.    The 7/27/06 Certification refers to the Master Drywall
and Lather Agreement executed on September 1, 2002 and effective
to and including August 31, 2007 ("2002-2007 Master Agreement").
In the 7/26/06 Certification, Defendant agreed to abide by the
terms and conditions in the 2002-2007 Master Agreement, and in
any "amendments, modifications, changes, extensions and renewals,
thereto."  [Complaint, Exhibit A.]

5.    Exhibit B to the Complaint is the Master Agreement
covering Drywall, Acoustical Workers and Lathers in the State of
Hawaii, Effective September 1, 2007 to and including August 31,

2012 ("Master Agreement"). Although the Complaint does not
expressly state that the Master Agreement is an extension or
renewal of the 2002-2007 Master Agreement, the Complaint states
that, in the 7/26/06 Certification, Defendant agreed to the terms
and conditions of the Master Agreement. [Complaint at ¶ 6.]
Upon the entry of default, the Court takes this allegation to be
true, <u>see</u> <u>TeleVideo Sys., Inc. v. Heidenthal</u>, 826 F.2d 915, 917-
18 (9th Cir. 1987), and assumes that the Master Agreement is an
extension or renewal of the 2002-2007 Master Agreement.

6.     Under the terms of the Master Agreement, Defendant
promised to contribute and pay to the Trust Funds certain
employee benefit trust fund contributions arising from hourly
work performed by Defendant's covered employees. <u>See generally</u>
Master Agreement at 10-12, § 14.

7.     In accordance with the terms of the Master Agreement,
Defendant promised to submit timely reports to the Trust Funds
reporting hours worked by Defendant's covered employees and to
permit audits of their payroll records to allow Plaintiffs to
ascertain whether all contributions due had been paid. <u>See
generally</u> Master Agreement at 10-12, § 14.

8.     In accordance with the terms of the Master Agreement,
Defendant agreed to be subject to and bound by all terms and
conditions of the various trust agreements, and further promised

10

that, in the event any monthly contributions were not paid when
due, Defendant would pay to each Trust Fund liquidated damages in
the amount of twenty percent (20%) of such delinquent and unpaid
contributions due to each respective fund or twenty dollars
($20.00), whichever is greater, for each and every delinquent
monthly contribution as provided by the Master Agreement as and
for liquidated damages and not as a penalty.  [Master Agreement
at 11-12, § 14.J.4.(A)[c], (B).]

9.   In accordance with the terms of the Master Agreement,
Defendant further promised that, in the event any monthly
contributions were not paid when due, Defendant would pay to each
Trust Fund interest on the unpaid contributions the amount of
twelve percent (12%) per annum in addition to the liquidated
damages.  [Id. at 11, § 14.J.4.(A)[b].]

10.   Defendant breached the Master Agreement by continuously
failing to pay and transmit employee benefit trust fund
contributions to the Trust Funds.

11.   As fiduciaries, Plaintiff trustees have standing under
29 U.S.C. § 1132(a)(3) and § 1145 to bring this action in this
district court to seek redress for violations of terms of the CBA
and to enforce the terms of the CBA by obtaining appropriate
relief from this Court.  Section 502(e) of ERISA grants exclusive
jurisdiction to the district courts to hear "civil actions under

this subchapter brought by the Secretary [of Labor] or by a participant, beneficiary, [or] fiduciary." 29 U.S.C. § 1132(e)(1).

12. In accordance with the terms of the Master Agreement and 29 U.S.C. § 1132(g)(2), Plaintiffs are entitled to recover from Defendant the delinquent contributions and liquidated damages in accordance with the payment deadlines set forth in the Master Agreement, provided that they submit sufficient evidence of the amounts owed.

13. Under terms of the Master Agreement and 29 U.S.C. § 1132(g)(2), Plaintiffs are entitled to recover interest from Defendant at the rate of twelve percent (12%) per annum on any unpaid Trust Fund contributions, provided that they submit sufficient evidence of the amounts owed.

14. Plaintiffs seek the following amounts from Defendant, excluding attorneys' fees and costs:

Delinquent trust fund contributions for period
January 2008 through December 2008 ............ $134,155.91

Liquidated damages for period January 2008 through
December 2008 ................................. $29,551.10

12% Interest ................................... $4,043.15

401 (k) Lost Earning Interest .................... $117.12

TOTAL ........................................ $167,867.28

together with additional interest at a per annum rate of twelve

12

percent (12%) until judgment is satisfied.  [Complaint at ¶ 15.]

B.   **Delinquent Contributions**

15.   Plaintiffs have provided sufficient evidence of the delinquent contributions owed to them by submitting a table showing the amounts owed as of December 10, 2010.  [12/14/10 Supplemental Memorandum, Supplemental Declaration of Lorraine H. Akiba ("12/14/10 Supplemental Akiba Declaration"), Exhibit A ("12/10/10 Table").]

16.   The 12/10/10 Table shows: the original amount of delinquent contributions for each Trust Fund for the period in question – totaling $158,012.76; the late, partial payments that Defendant made to each Trust Fund – totaling $23,856.85; and the remaining delinquent contributions owed for each Trust Fund – totaling $134,155.91.  [Id.]

17.   The Court therefore FINDS that Plaintiffs are entitled to $134,155.91 in delinquent contributions.[2]

---

[2] The Court notes that the original table which Plaintiffs attached to the Motion as evidence of the balance due as of August 24, 2010 ("8/24/10 Table") stated that the total amount of delinquent contributions was $138,316.18.  [Motion, Declaration of Lorraine H. Akiba, Exhibit 4.]  The 12/14/10 Supplemental Memorandum clarified that the column in the 8/24/10 Table reflecting a total balance of $138,316.18 in contributions due included: the delinquent contributions - $134,155.91; the twelve percent (12%) interest on delinquent contributions - $4,04315; and the 410(k) Lost Earnings Interest - $117.12.  [12/14/10 Supplemental Memorandum at 5.]  The 12/10/10 Table provides
(continued...)

## C.     **Liquidated Damages**

18.    The 12/10/10 Table also provides sufficient evidence of the amount of liquidated damages owed to Plaintiffs.  [Id.]

19.    The 12/10/10 Table shows: the original amount of liquidated damages for each Trust Fund for the period in question - totaling $32,102.14; the partial payments that Defendant made for each Trust Fund's liquidated damages - totaling $2,551.04; and the remaining liquidated damages owed for each Trust Fund - totaling $29,551.10.  [Id.]

20.    The 11/29/10 Order noted that the amount of liquidated damages claimed, $29,551.10, did not equal twenty percent (20%) of the delinquent contributions claimed, $134,155.91, as provided for in the Master Agreement.  [11/29/10 Order at 3.]

21.    In the 12/14/10 Supplemental Memorandum, Plaintiffs explained that the Master Agreement provides for liquidated damages of either twenty percent (20%) of the total amount of contributions due for that month or twenty dollars ($20.00), whichever is greater.  Plaintiffs also emphasize that Defendant's partial payments of its delinquent contributions did not alter the original assessment of liquidated damages.  [12/14/10

---

² (...continued)
somewhat more clarity than the 8/24/10 Table because the 12/10/10 Table sets forth the three categories of amounts claimed in three separate columns.

Supplemental Memorandum at 3-4.]

22.  For example, as of December 10, 2010, Defendant owed
$48,534.86 in delinquent contributions, and $10,130.92 in
liquidated damages, to the Health and Welfare Fund.  As this
Court noted in the 11/29/10 Order, the amount of liquidated
damages does not equal twenty percent (20%) of the amount of
delinquent contributions.  The Court, however, must consider the
partial payments of $6,056.36 in fund contributions and $791.93
in liquidated damages.  The original delinquent contributions
were $54,591.22 and the original liquidated damages were
$10,922.85.  [12/10/10 Table.]  Twenty percent of $54,591.22 is
$10,918.24, slightly less than the original liquidated damages
amount of $10,922.85.  Evidently, this is explained by the fact
that the liquidated damages are calculated on a monthly basis and
the amount of liquidated damages assessed in any particular month
is the greater of twenty percent of the delinquent contributions
or twenty dollars ($20.00).  When a fund is assessed the twenty-
dollar liquidated damages for one or more months, the total
amount of liquidated damages due at the year's end will
necessarily exceed twenty percent of that year's overall
delinquent contribution amount.

23.  This may be seen in the Vacation/Admin Fund.  The
original total of delinquent contributions was $444.80 for the

15

period in question, January 2008 to December 2008. Twenty percent (20%) of that amount would be $88.96, but the original total of liquidated damages was $240.00. [Id.] The Vacation/Admin Fund therefore must have assessed the twenty-dollar ($20.00) liquidated damages for each of the twelve (12) months that Defendant owed delinquent contributions to that fund.

24. The Court therefore FINDS that Plaintiffs are entitled to $29,551.10 in liquidated damages.

**D.    Twelve Percent Interest**

25. Plaintiffs' 12/14/10 Supplemental Memorandum and 12/10/10 Table provide sufficient evidence regarding Plaintiffs' claim of $4,043.15, which represents interest on the unpaid contributions at a rate of twelve percent (12%) per annum.

26. Plaintiffs explain in their 12/14/10 Supplemental Memorandum that the applicable ERISA statutes and the Master Agreement authorize them to assess, in addition to liquidated damages, twelve percent (12%) per annum interest on the amount of delinquent contributions. [12/14/10 Supplemental Memorandum at 3 (citing 29 U.S.C. § 1132(g)(2)); 12/14/10 Supplemental Akiba Declaration at ¶ 9 (citing Master Agreement at 11, § 14.J.4.(A)).]

27. Under the Master Agreement, Plaintiffs are entitled to, inter alia:

Interest on the unpaid contributions at the rate
of twelve (12) percent per annum or the rate
prescribed under Section 6621 of the Internal
Revenue Code of 1954, whichever is greater,
provided, however, that should such delinquent
Trust Fund contributions be paid in a timely
fashion as provided for herein, no interest shall
be charged. Interest shall be computed from the
first (1st) day following the month for which
Trust Fund contributions are owed.

[Master Agreement at 11, § 14.J.4.(A)[b].]

28. The Court notes that Defendant's claims for interest on

delinquent contributions are for less than twelve percent of the

delinquent contribution amounts owed on each fund. For example,

Defendant originally owed $54,591.22 in delinquent contributions

to the Health and Welfare Fund, and after partial payments

totaling $6,056.36, owed $48,534.86 as of December 10, 2010.

Although Plaintiffs seek only $1,377.31 in interest for that

fund, twelve percent (12%) of $54,591.22 is $6,550.95, and twelve

percent of $48,534.86 is $5,824.18. [12/10/10 Table.] There are

similar results for the other funds.[3]

29. Because Plaintiffs are entitled to twelve percent (12%)

per annum interest on the unpaid contributions under the Master

Agreement, and Plaintiffs' claim for interest on delinquent

contributions is less than (and not more than) what would seem

_____

[3] Possibly, these differences result from the timing of the
partial payments that Defendant made to each fund.

17

due if twelve percent interest were assessed on the delinquent contribution amounts, the Court will allow Plaintiffs the amount of interest that they request.

30. The Court therefore FINDS that Plaintiffs are entitled to $4,043.15, their claimed twelve percent (12%) per annum interest.

**E.** **401(k) Lost Earnings Interest**

31. Plaintiffs' 12/14/10 Supplemental Memorandum and 12/10/10 Table also provide sufficient evidence regarding Plaintiffs' entitlement to the claimed $117.12 in 401(k) Lost Earnings Interest.

32. Plaintiffs explain that:

> The lost earnings interest amounts are required to be assessed for the employee's lost earnings due to the employer paying contributions late to the Trust Funds which otherwise would be invested and earning interest income on behalf of the employee had such amounts been timely paid to the 401(k) Fund as participant contributions.

[12/14/10 Supplemental Memorandum at 4.] They argue that the legal authority for the assessment of 401(k) Lost Earnings Interest is 29 U.S.C. § 1132(g)(2) and 29 C.F.R. § 2510.3-102.[4] [Id. at 5.] Plaintiffs also submitted the Hawaii Carpenters 401(k) Fund Policy, which sets for the policy and procedures for

---

[4] The applicable sub-section of 29 C.F.R. § 2510.3-102 is (d)(3)(ii)(A).

assessing, <u>inter alia</u>, the 401(k) Lost Earnings Interest.  [<u>Id.</u>, 12/14/10 Supplemental Akiba Declaration, Exhibit C.]

33.  Plaintiffs also state that the 401(k) Lost Earnings Interest "is required to be calculated based on the United States Department of Labor Voluntary Fiduciary Correction Program ["VFCP"] calculator.  The calculator is available at http://askebsa.dol.gov/VFCPCalculator/WebCalculator.aspx." [12/14/10 Supplemental Memorandum at 4-5.]  The VFCP calculator includes the following fields: principal, loss date, recovery date, and final payment date.  Plaintiffs attached a printout of this website.  [<u>Id.</u>, 12/14/10 Supplemental Akiba Declaration, Exhibit B.]

34.  However, Plaintiffs' printout does not include the information that they entered into the VFCP calculator to arrive at the $117.12 amount for the claimed 401(k) Lost Earnings Interest, nor is the Court able to determine from the documents that Plaintiffs submitted what information the Court could enter into the calculator to arrive at that amount.

35.  For example, entering: $10,311.56 (the unpaid contributions to the 401(k) Fund as of December 10, 2010) as the principal amount; December 31, 2008 as the loss date;[5] and

---

[5] The Complaint addresses unpaid contributions for the
(continued...)

December 14, 2010 as both the recovery date and the final payment date,[6] results in a total amount of $865.50, far greater than the claimed amount.

36.  Nonetheless, because Plaintiffs are entitled to 401(k) Lost Earnings Interest on the unpaid contributions, and Plaintiffs seek less than (and not more than) what would seem due according to the VFCP calculator, the Court will allow Plaintiffs the amount of 401(k) Lost Earnings Interest that they request.

37.  The Court therefore FINDS that Plaintiffs are entitled to $117.12, their claimed 401(k) Lost Earnings Interest.

**F.  Post-judgment Interest**

38.  Plaintiffs also seek post-judgment interest on the unpaid contributions at a per annum rate of twelve percent (12%), which is to be calculated on a per diem basis.  [12/14/10 Supplemental Memorandum at 6.]  Plaintiffs are entitled to post-judgment interest based upon the Master Agreement's continuing assessment of twelve percent interest per annum until Defendant

---

[5](...continued)
period January 2008 to December 2008.  [Complaint at ¶ 15.]  The Court uses the last day of that period as the loss date for purposes of this example.

[6] Presumably, Plaintiffs will not recover the unpaid 401(k) contributions or collect final payment until satisfaction of the eventual judgment in this case.  For purposes of this example, however, the Court uses the date of Plaintiffs' Supplemental Memorandum as a conservative estimate.

pays the delinquent contributions.  [Master Agreement at 11,

§ 14.J.4.(A)[b].]  In other words, Plaintiffs' entitlement to

interest is not limited to only the period until Plaintiffs

obtain a final judgment in this case.

40.  Plaintiffs have set forth the following formula for the

calculation of the post-judgment interest: "amount of

contributions x 12% interest x number of days of delinquency

divided by 365 days in the year."  [12/14/10 Supplemental

Memorandum at 6.]

40.  Plaintiffs have established both their entitlement to

post-judgment interest and a satisfactory method to determine the

amount of such interest.

41.  The Court therefore FINDS that Plaintiffs are entitled

to post-judgment interest on the delinquent contributions at the

per annum rate of twelve percent (12%), which is to be calculated

on a per diem basis.

**G.**  **Further Obligations**

42.  Defendant's obligations to Plaintiffs to pay Trust Fund

contributions are continuing obligations, and Defendant may

accrue and owe additional Trust Fund contributions and liquidated

damages up to the entry of final judgment.

43.  Plaintiffs are not barred or precluded from later

seeking all amounts owed for contributions, liquidated damages,

and interest which may subsequently be discovered through audits
or otherwise, arising from work that Defendant's covered
employees performed both before and after August 2010.

**H.    Attorneys' Fees and Costs**

44.    Under the terms of the Master Agreement, Defendant
promised that, if the Trust Funds brought legal action to enforce
the Master Agreement against Defendant, Defendant would pay all
of the Trust Funds' court and audit costs and reasonable
attorneys' fees.  [Master Agreement at 11-12.]

45.    An award of attorneys' fees to employee benefit plans
is mandatory in all successful actions to recover delinquent
contributions under 29 U.S.C. §§ 1132 and 1145.

46.    Plaintiffs are therefore entitled to their reasonable
attorneys' fees and costs incurred in bringing the instant
action.

47.    Under federal law, reasonable attorneys' fees are
generally based on the traditional "lodestar" calculation set
forth in Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  See
Fischer v. SJB-P.D., Inc., 214 F.3d 1115, 1119 (9th Cir. 2000).
The court must determine a reasonable fee by multiplying "the
number of hours reasonably expended on the litigation" by "a
reasonable hourly rate."  Hensley, 461 U.S. at 433.  Second, the
court must decide whether to adjust the lodestar amount based on

an evaluation of the factors articulated in <u>Kerr v. Screen Extras Guild, Inc.</u>, 526 F.2d 67, 70 (9th Cir. 1975), that have not been subsumed in the lodestar calculation.  <u>See</u> <u>Fischer</u>, 214 F.3d at 1119.

  a. Plaintiffs seek a total of $1,241.00 in attorneys' fees, representing 7.3 hours of work performed by Lorraine Akiba, Esq., at a rate of $170 per hour.  [10/8/10 Supplemental Akiba Declaration, Exhibit A.]

  b. Ms. Akiba was admitted to the Hawai`i bar in 1981. [Motion, Declaration of Lorraine H. Akiba ¶ 14.]  The Court finds that Ms. Akiba's requested hourly rate is manifestly reasonable.

  c. The Court finds that all of Ms. Akiba's time is compensable in this case at a rate of $170 per hour.

  d. The Court also finds that it is not necessary to adjust the lodestar amount based on the <u>Kerr</u> factors that have not been subsumed in the lodestar calculation.

 48. Plaintiffs also seek a total of $508.26 in costs consisting of filing fees, copying charges, and sheriff's service fees.  [10/8/10 Supplemental Akiba Declaration, Exhibit A.]

 49. The Court finds that all of Plaintiffs' costs are compensable in this case.

 50. The Court therefore FINDS that Plaintiffs are entitled to $1,241.00 in attorneys' fees and $508.26 in costs.

## CONCLUSIONS

On the basis of the foregoing, the Court HEREBY GRANTS Plaintiffs' Motion as follows:

1.    Plaintiffs' request for a judgment for delinquent Trust Fund contributions for the period January 2008 through December 2008 in the amount of $134,155.91 is GRANTED;

2.    Plaintiffs' request for a judgment for liquidated damages for the period January 2008 through December 2008 in the amount of $29,551.10 is GRANTED;

3.    Plaintiffs' request for a judgment for $4,043.15 in interest, which represents twelve percent (12%) per annum interest on the delinquent contributions, is GRANTED;

4.    Plaintiffs' request for a judgment for $117.12 in 401(k) Lost Earning Interest is GRANTED;

5.    Plaintiffs' request for attorneys' fees in the amount of $1,241.00 and costs in the amount of $508.26 is GRANTED; and

6.    Plaintiffs' request for post-judgment interest on the delinquent contributions at the per annum rate of twelve percent (12%), which is to be calculated on a per diem basis until the payment of such contributions, is GRANTED.

The Court DIRECTS the Clerk of Court to enter final judgment in favor of Plaintiffs and against Defendant in the

total amount of $165,456.27,[7] plus post-judgment interest on the delinquent contributions at the per annum rate of twelve percent (12%), which is to be calculated on a per diem basis until the payment of such contributions.

The Court notes that the entry of final judgment in this matter is without prejudice to Plaintiffs' right to seek other and further damages and interest from Defendant arising from unaudited hours worked by Defendant's covered employees that are not the subject of the instant case.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, February 11, 2011.



_____
Alan C. Kay
Sr. United States District Judge


Hawaii Carpenters Trust Funds et al. v. TNT Plastering & Stucco, Inc., et al., Civ. No. 10-00352 ACK-LK, Order Granting Plaintiffs' Motion for Default Judgment, As Supplemented

---

[7] $165,456.27 = $134,155.91 (delinquent Trust Fund contributions) + $29,551.10 (liquidated damages) + $1,241.00 (attorneys' fees) + $508.26 (costs).